UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE, a non-
profit corporation,

     Plaintiff,

  v.

USA WASTE OF CALIFORNIA, INC.
a Delaware corporation, and,
STEVE CAMERON, an individual,

     Defendants.

_____/

NO. CIV. 2:11-2663 WBS KJN

MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION TO DISMISS
AND MOTION FOR SUMMARY
JUDGMENT

----oo0oo----

Plaintiff California Sportfishing Protection Alliance ("CSPA") brought this action against defendants USA Waste of California, Inc. ("USA Waste") and Steve Cameron arising out of defendants' alleged violations of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1251-1387. Presently before the court are USA Waste's motion to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3), (Docket No. 37), and USA Waste and Cameron's joint motion for summary

1

1  judgment on all claims pursuant to Rule 56.

2  I.   <u>Factual and Procedural Background</u>

3       A.   <u>CWA Notice and Delay Compliance</u>

4            On August 9, 2011, plaintiff gave notice to Cameron,

5  Art Rasmussen, and "Waste Management of Nevada County" of alleged

6  violations of the CWA.[1]  (FAC Ex. A (Docket No. 6).)  Cameron and

7  Rasmussen were notified in their respective capacities as

8  District and Facility Managers at Waste Management of Nevada

9  County.  (<u>Id.</u>)  On August 10, 2011, a courtesy copy of the notice

10 was also emailed to USA Waste's legal counsel.  (Packard Decl.

11 Ex. A (Docket No. 18-1).)

12           On August 24, 2011, USA Waste's legal counsel notified

13 plaintiff that "Waste Management of Nevada County" was a trade

14 name for USA Waste.  (<u>Id.</u> Ex. B.)  Later that day, plaintiff

15 served a second notice, specifically naming USA Waste as a party

16 liable for the CWA violations.  (FAC Ex. B.)

17           USA Waste's counsel, Mr. Kenefick, responded to the

18 notice served on USA Waste by email on September 7, 2011.

19 (Packard Decl. Ex. D.)  In this email, Kenefick stated that he

20 "assume[d] that the 60-day period will expire at the end of

21 October based on USA Waste's receipt of the Notice on August

22 30th" and that he "intend[ed] to use the next 50 or so days to

23 complete [] assessment of [plaintiff's] letter and the facility."

24 (<u>Id.</u>)

25 ─────────────────────

26      [1]   Plaintiff further claims that it served notice on CT
   Corporation System on August 9, 2011.  (Pl.'s Mem. in Opp'n to
   Def.'s Mot. to Dismiss at 2:13-16 (Docket No. 17);FAC Ex. A.)
27 During oral arguments, defendant disputed this claim and stated
   that plaintiff did not attempt to serve CT Corporation System
28 with notice until August 22, 2011.

On October 8, 2011, sixty days after serving the initial notice and forty-five days after serving the second notice, plaintiff filed a complaint in federal court against Cameron and Rasmussen alleging violations of the CWA. (Docket No. 1.)  On October 24, 2011, sixty-one days after plaintiff served its second notice, plaintiff filed its FAC, which added USA Waste as a party to the action.  (Docket No. 6.)[2]

B.   Parties' Prior Litigation and Settlement Agreements

The parties have previously been engaged in litigation regarding CWA violations at different facilities on at least four separate occasions.[3]  (Lozeau Decl. ¶¶ 3-4, Exs. A, B (Docket No.19-3); Butler Decl. ¶¶ 4-7, Exs. E, G (Docket No. 16).)  In November 2010, the parties entered into a consent agreement to resolve litigation regarding USA Waste's North Valley facility in California Sportfishing Protection Alliance v. USA Waste of California, Inc., Case No. 2:10-CV-01096-GEB-KJN (E.D. Cal.) ("North Valley").  The consent agreement includes the following language:

> 14. CSPA Waiver and Release.  Upon Court approval and entry of this Consent Agreement, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Defendants and their officers, directors, employees, shareholders, parents, subsidiaries, and affiliates, and each of their

---

[2]  Rasmussen was not listed as a defendant in the FAC because he was no longer employed by USA Waste.  (Def.'s Reply in Supp. of Mot. to Dismiss at 7:16-17 (Docket No. 20).)

[3]  Defendants raise fifteen evidentiary objections to statements regarding the parties' prior consent agreements contained in the Declarations of Andrew Packard and Michael Lozeau.  (Docket No. 21-2.)  Because the court does not rely on any of the evidence objected to by defendants, the objections are overruled as moot.

3

predecessors, successors, and assigns, and each of their agents, attorneys, consultants, and other representatives (each a "Released Defendant Party") from, and waives all claims which arise or could have arisen from or pertain to the Action, including, without limitation, all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure of USA Waste to comply with the Clean Water Act and Proposition 65 at the Facility, up to the Effective Date of this Consent Decree.

During the term of the Consent Agreement, CSPA agrees that neither CSPA, its officers, executive staff, or members of its governing board nor any organization under the control of CSPA, its officers, executive staff, or member of its governing board, will file any lawsuit against USA Waste seeking relief for alleged violations of the Clean Water Act, General Permit or Proposition 65.

(Butler Decl. Ex. E ("North Valley Consent Agreement") ¶ 14.) The North Valley Consent Agreement term expires on September 30, 2012. (<u>Id.</u> ¶ 18.)

## II. <u>Legal Standards</u>

### A. <u>Motion to Dismiss</u>

Rule 12(h)(3) of the Federal Rules of Civil Procedure provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." <u>Berkshire Fashions, Inc. v. M.V. Hakusan II</u>, 954 F.2d 874, 880, n.3 (3d Cir. 1992); <u>see also</u> <u>Kairy v. SuperShuttle Int'l, Inc.</u>, 721 F. Supp. 2d 884, 885 (N.D. Cal. 2009) (applying a single standard to a motion to dismiss pursuant to Rules 12(b)(1) and 12(h)(3)).

Under Federal Rule of Civil Procedure 12(b)(1), a

4

1   complaint must be dismissed once it is determined that a court

2   lacks subject matter jurisdiction to adjudicate the claims.  Fed.

3   R. Civ. P. 12(b)(1).  The court presumes a lack of jurisdiction

4   until the party asserting jurisdiction proves otherwise, and,

5   once subject matter jurisdiction has been challenged, the burden

6   of proof is placed on the party asserting that jurisdiction

7   exists.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375,

8   376 (1994);  <u>Scott v. Breeland</u>, 792 F.2d 925, 927 (9th Cir. 1986)

9   (holding that "the party seeking to invoke the court's

10  jurisdiction bears the burden of establishing that jurisdiction

11  exists").

12          Ordinarily, when a Rule 12(b)(1) motion is ruled upon,

13  "no presumptive truthfulness attaches to plaintiff's allegations,

14  and the existence of disputed material facts will not preclude

15  the trial court from evaluating for itself the merits of

16  jurisdictional claims."  <u>Augustine v. United States</u>, 704 F.2d

17  1074, 1077 (9th Cir. 1983) (quoting <u>Thornhill Publ'g Co. v. Gen.</u>

18  <u>Tel. Corp.</u>, 594 F.2d 730, 733 (9th Cir. 1979)).  The court is

19  free to "review any evidence, such as affidavits and testimony,

20  to resolve factual disputes concerning the existence of

21  jurisdiction."  <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th

22  Cir. 1988).

23      B.   <u>Summary Judgment</u>

24          Summary judgment is proper "if the movant shows that

25  there is no genuine dispute as to any material fact and the

26  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

27

28

1  P. 56(a).[4]  A material fact is one that could affect the outcome
2  of the suit, and a genuine issue is one that could permit a
3  reasonable jury to enter a verdict in the non-moving party's
4  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248
5  (1986).  The party moving for summary judgment bears the initial
6  burden of establishing the absence of a genuine issue of material
7  fact and can satisfy this burden by presenting evidence that
8  negates an essential element of the non-moving party's case.
9  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).
10 Alternatively, the moving party can demonstrate that the
11 non-moving party cannot produce evidence to support an essential
12 element upon which it will bear the burden of proof at trial.
13 <u>Id.</u>

14      Once the moving party meets its initial burden, the
15 burden shifts to the non-moving party to "designate 'specific
16 facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at
17 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
18 the non-moving party must "do more than simply show that there is
19 some metaphysical doubt as to the material facts."  <u>Matsushita</u>
20 <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).
21 "The mere existence of a scintilla of evidence . . . will be
22 insufficient; there must be evidence on which the jury could
23 reasonably find for the [non-moving party]."  <u>Anderson</u>, 477 U.S.
24 at 252.

25      In deciding a summary judgment motion, the court must

26 _____

27      [4]   Federal Rule of Civil Procedure 56 was revised and
   rearranged effective December 1, 2010.  However, as stated in the
   Advisory Committee Notes to the 2010 Amendments to Rule 56,
28 "[t]he standard for granting summary judgment remains unchanged."

6

view the evidence in the light most favorable to the non-moving

party and draw all justifiable inferences in its favor.  _Id._ at

255.  "Credibility determinations, the weighing of the evidence,

and the drawing of legitimate inferences from the facts are jury

functions, not those of a judge . . . ruling on a motion for

summary judgment . . . ."  _Id._

III. _Discussion_

    A.   _Motion to Dismiss_

      The Clean Water Act ("CWA") authorizes citizen suits

under 33 U.S.C. § 1365(1).  The subsection that is relevant here,

33 U.S.C. § 1365(b)(1)(A), authorizes citizen suits with the

following limitation: "No action may be commenced prior to sixty

days after the plaintiff has given notice of the alleged

violation . . . to any alleged violator of the standard,

limitation, or order."  The required notice must be given in

"such a manner as the Administrator [of the EPA] shall prescribe

by regulation."  33 U.S.C. § 1365(b).  The corresponding federal

regulation states that the 60-day notice must include information

sufficient to allow the alleged violator

> to identify the specific standard, limitation, or order
> alleged to have been violated, the activity alleged to
> constitute a violation, the persons or person responsible
> for the alleged violation, the location of the alleged
> violation, the date or dates of such violation, and the
> full name, address, and telephone number of the person
> giving notice.

40 C.F.R. § 135.3(a).

      In _Hallstrom v. Tillamook County_, 493 U.S. 20 (1989),

the United States Supreme Court addressed the 60-day notice

requirement as it applied to citizen suits under the Resource

Conservation and Recovery Act of 1976 ("RCRA").  The Court held

7

that "the notice and 60-day delay requirements are mandatory conditions precedent to commencing suit under the RCRA citizen suit provision." Id. at 31. The Court further held that "a district court may not disregard these requirements at its discretion," id., and that when a citizen suit fails to meet the notice and 60-day delay requirement, "the district court must dismiss the action as barred by the terms of the statute." Id. at 33.

The Ninth Circuit Court of Appeals extended Hallstrom's holding to the notice and delay provision of the CWA, which imposes similar statutory notice and delay requirements. See Waterkeepers N. Cal. v. AG Indus. Mfg., Inc., 375 F.3d 913, 916 (9th Cir. 2004); Natural Res. Def. Council v. Sw. Marine, Inc., 236 F.3d 985, 995 (9th Cir. 2000). Compliance with this provision of the CWA is a jurisdictional prerequisite to filing suit, and failure to strictly comply with the notice requirement acts as an absolute bar to bringing a citizen suit under the CWA. Sw. Marine, Inc., 236 F.3d at 995. Accordingly, "[t]he citizen suit notice requirements cannot be avoided by employing a 'flexible or pragmatic construction.'" Kern Cnty. Farm Bureau v. Badgley, No. 02-5376, 2002 WL 43236869, at *7 (E.D. Cal. Oct. 10, 2002) (quoting Hallstrom, 493 U.S. at 26).

The legislative policy underlying the notice and delay requirement is that it affords the alleged violator an opportunity to bring itself into compliance with the CWA, as well as giving the enforcer of first resort, the EPA or the appropriate state agency, time to institute an enforcement action. See Hallstrom, 493 U.S. at 26. "The provision therefore

8

provides an opportunity for settlement or other resolution of a dispute without litigation." Sw. Cntr. for Biological Diversity v. U.S. Bureau of Reclamation, 143 F.3d 515, 520 (9th Cir. 1998) (quoting Forest Conservation Council v. Espy, 835 F. Supp. 1202, 1210 (D. Idaho 1993)). "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit." Sw. Marine, Inc., 236 F.3d at 996 (quoting Atl. States Legal Found., Inc. v. Stroh Die Casting Co., 116 F.3d 814, 819 (7th Cir. 1997)).

In this case, plaintiff served two separate notices on defendants -- the first on August 9, 2011, naming Cameron as a defendant and the second on August 24, 2011, naming USA Waste. Plaintiff similarly filed two separate versions of the complaint, each filed sixty days or more after the relevant notice. The parties dispute whether plaintiff "commenced" this action against USA Waste pursuant to § 1365(b)(1)(A) when it filed its original complaint against Cameron on October 8, 2011, or when it filed its FAC, in which USA Waste was named as a defendant for the first time.

An action alleging violations of the CWA is "commenced" when the CWA claim appears in the complaint. See Zands v. Nelson, 779 F. Supp. 1254, 1258 (S.D. Cal. 1991); College Park Holdings, LLC v. Racetrac Petroleum, Inc., 239 F. Supp. 2d 1322, 1330 (N.D. Ga. 2002). This case presents an unusual factual situation because the claims for violations of the CWA appear in the original complaint, but USA Waste was not a party to the suit, and therefore the CWA claims, until the FAC. The parties

have not provided, and the court is unable to find, any authority
that addresses how the notice and delay requirement should be
applied when a defendant is added to a suit through an amended
complaint.  This case instead appears to fall between two
developed areas of caselaw regarding the CWA's notice and delay
requirements.

       On the one hand, when an amended complaint merely
reiterates the claims in the original complaint in an attempt to
remedy the original complaint's failure to comply with the notice
and delay requirement, courts have held that the action was
"commenced" on the date the original complaint was filed.  See
Envirowatch, Inc. v. Fukino, No. 07-00016, 2007 WL 1933132, at *3
(D. Haw. June 28, 2007) ("This court has found no case decided
after Hallstrom in which the court looked to the amended
complaint, rather than the original complaint, in determining
whether a plaintiff had satisfied the sixty-day notice provision
. . . when the two complaints contain the same claims."); K.C.
1986 P'ship v. Reade Mfg., 33 F. Supp. 2d 1143, 1155-56 (W.D. Mo.
1998); cf. Hallstrom, 493 U.S. at 29 (holding that a stay
intended to remedy plaintiff's failure to comply with the notice
and delay requirement as to notifying the EPA could not be used
to remedy plaintiff's deficient original complaint).  In these
cases, the fact that the notice and delay requirement was not met
in the original complaint was critical because it meant that the
court did not have subject matter jurisdiction over the case when
it was originally filed.  See Envirowatch, 2007 WL 1933132, at
*3.  These cases are distinguishable from the present case
because USA Waste does not challenge the court's jurisdiction

10

over the claims pled in the original complaint, but instead argues that the court lacks jurisdiction over the claims pled against USA Waste in the FAC.

On the other hand, courts have held that for the purposes of determining compliance with a notice and delay provision relating to a claim that appears for the first time in the amended complaint, the court should look to the filing of the amended complaint to determine when the action was commenced. See id. at *4 ("After Hallstrom, courts have consistently held that jurisdiction may be based on an amended complaint filed more than sixty days after the notice of intent to sue only if the claim requiring sixty-day notice is brought for the first time in the amended complaint."); Zands, 779 F. Supp. at 1259; College Park Holdings, 239 F. Supp. 2d at 1330.  Here, although the same CWA claims are raised in the original complaint and the FAC, the FAC is the first time that USA Waste was named in the pleadings and therefore the first time that the CWA claims were brought against it.  The circumstances in this case therefore appear more similar to those in the line of cases permitting amendment to plead new claims.

"'Absent a clearly expressed legislative intention to the contrary,' the words of the statute are conclusive." Hallstrom, 493 U.S. at 28 (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980)).  In Hallstrom, the Court noted that strict compliance with the notice and delay requirement would "further the congressional purpose of giving agencies and alleged violators a 60-day nonadversarial period to achieve compliance with RCRA regulations."  Id. at 32.  Although

USA Waste was not a party to the original complaint, it argues that because the CWA claims allege violations at its facilities and against its employee, the filing of the original complaint effectively raised claims against it and prematurely ended the nonadversarial sixty-day period intended under § 1365(b)(1)(A).

Section 1365(b)(1)(A) makes no reference to the purpose of the notice and delay requirement being to allow the parties to have a nonadversarial period before suit is filed.  Relying on the Hallstrom Court's discussion of the legislative purpose of the notice and delay requirement, some courts have held that the relationship between the parties must remain nonadversarial during the delay period.  See, e.g., Supporters to Oppose Pollution, Inc. v. Heritage Grp., 760 F. Supp. 1338, 1342 (N.D. Ind. 1991).  Others have held that where a plaintiff seeks to bring multiple claims, only some of which are subject to a notice and delay requirement, the plaintiff should be allowed to proceed with those claims that are not subject to a notice and delay requirement without forfeiting their right to bring those claims that are.  See, e.g., Zands, 779 F. Supp. at 1259-60.  The latter position is predicated upon the opinion that "[e]ven in the face of other causes of action, alleged . . . violators still have the opportunity, and the incentive, to take measures to stop commencement of the . . . citizen suit action which has not yet been added to the lawsuit."  Id. at 1257.  A finding that a nonadversarial period is mandated would require the court to hold that a complaint could never be amended to bring an otherwise properly noticed CWA claim.

Assuming for the purpose of this order that § 1365

12

requires a nonadversarial period, USA Waste fails to show that
such a period was lacking here.  USA Waste never argues that the
claims against it in the FAC relate back to the original
complaint such that it was effectively being sued when the first
complaint was filed.  Although USA Waste may have been obligated
to defend and indemnify Cameron under his employment agreement,
it could not have been held liable as an entity under the
original complaint.  USA Waste's suggestions to the contrary
directly contradict its position in opposition to plaintiff's
request to amend the FAC to allege that USA Waste received actual
notice of the proposed CWA claims on August 9, 2011, when Cameron
was served notice.  USA Waste cannot have it both ways.  If the
original complaint commenced a suit against it,  then it follows
that the August 9, 2011, notice sufficiently alerted it to
plaintiff's proposed CWA claims.[5]  Conversely, if the nominal
exclusion of USA Waste from the August 9, 2011, notice rendered
that notice insufficient, then the original complaint similarly
would have been insufficient to commence an action against it.
Under either scenario, plaintiff fulfilled its notice and delay
obligation pursuant to § 1365(b)(1)(A) because it waited at least
sixty days after each notice before filing the respective
complaint.

       Consistent with the purpose of the notice delay
requirement, USA Waste retained an incentive to avoid litigation

---

       [5]     The court in <u>Two Rivers Terminal, L.P. v. Chevron USA</u>
<u>Inc.</u>, 96 F. Supp. 2d 426 (M.D. Pa. 2000), suggested that actual
notice was sufficient to fulfil § 1365(b)(1)(A)'s notice
requirement.  <u>Id.</u> at 431.  In that case, plaintiff inadvertently
served the notice upon defendant's parent corporation.

1  on the CWA claims against it up until the moment that it was

2  named as a defendant in the present suit.  See Sw. Cntr. for

3  Biological Diversity, 143 F.3d at 520.  During the sixty-day

4  period leading up to the filing of the FAC, USA Waste was free to

5  negotiate with plaintiff and avoid suit by remedying the alleged

6  violations at its facility.  It appears to the court that

7  plaintiff followed the letter of the law and the court has

8  subject matter jurisdiction over this action.  Accordingly the

9  court will deny USA Waste's motion to dismiss.[6]

10      B.  Motion for Summary Judgment

11          Under California law, a party alleging promissory

12  estoppel must show: (1) the existence of a promise "clear and

13  unambiguous in its terms"; (2) "reliance by the party to whom the

14  promise is made"; (3) that any reliance was both "reasonable and

15  foreseeable"; and (4) that the party asserting the estoppel was

16  injured by his reliance.  US Ecology, Inc. v. State, 129 Cal.

17  App. 4th 887, 901 (4th Dist. 2005) (quoting Laks v. Coast Fed.

18  Sav. & Loan Ass'n, 60 Cal. App. 3d 885, 890 (2d Dist. 1976)).

19  Defendants argue that plaintiff is estopped from bringing the

20  present suit pursuant to its waiver in paragraph 14 of the

21  parties' prior North Valley Consent Agreement.

22          "The fundamental rules of contract interpretation are

23  based on the premise that the interpretation of a contract must

24  give effect to . . . 'the mutual intention of the parties at the

25

26      [6]  Because the court finds that plaintiff did not violate
    the notice and delay provision of the CWA when it filed its FAC,
27  the court need not address plaintiff's request to amend the FAC
    to allege that USA Waste received actual notice on August 9 when
28  plaintiff mistakenly served "Waste Management of Nevada County,"
    which is a trade name of USA Waste.  (Packard Decl. Ex. B.)

time the contract is formed . . . .'" <u>Waller v. Truck Ins.</u>
<u>Exch., Inc.</u>, 11 Cal. 4th 1, 18 (1995) (quoting Cal. Civ. Code §§
1636, 1639).  On a motion for summary judgment, a court may
properly interpret a contract as a matter of law only if the
meaning of the contract is unambiguous.  <u>Miller v. Glenn Miller</u>
<u>Prods., Inc.</u>, 454 F.3d 975, 990 (9th Cir. 2006) (citation
omitted).

          Language in a contract must be construed in light of
the instrument as a whole and in the circumstances of the case.
<u>Monaco v. Bear Stearns Residential Mortg. Corp.</u>, 554 F. Supp. 2d
1034, 1040 (C.D. Cal. 2008).  Language is ambiguous if it "is
reasonably susceptible of more than one application to material
facts." <u>Dore v. Arnold Worldwide, Inc.</u>, 39 Cal. 4th 384, 391
(2006).  When a contract provision is ambiguous, therefore,
"ordinarily summary judgment is improper because differing views
of the intent of parties will raise genuine issues of material
fact." <u>Maffei v. N. Ins. Co. of N.Y.</u>, 12 F.3d 892, 898 (9th Cir.
1993) (quoting <u>United States v. Sacramento Mun. Util. Dist.</u>, 652
F.2d 1341, 1344 (9th Cir. 1981)).

          Although the parol evidence rule prohibits the use of
extrinsic evidence where the contract "is intended to be a final
expression of that agreement and a complete and exclusive
statement of the terms," extrinsic evidence is admissible to
explain or interpret ambiguous language.  <u>Lonely Maiden Prods.,</u>
<u>LLC v. Goldentree Asset Mgmt., LP</u>, 201 Cal. App. 4th 368, 376 (2d
Dist. 2011) (citing Cal. Code Civ. Proc. § 1856(b), (d)).  If
there is no material conflict over extrinsic evidence, the court
may interpret an ambiguous term as a matter of law.  <u>Id.</u> at 377.

15

Summary judgment is inappropriate, however, if the court cannot determine the parties' intent at the time of contracting without judging the credibility of the extrinsic evidence.  See City of Hope Nat. Med. Ctr. v. Genentech, Inc., 43 Cal. 4th 375, 395 (2008).

The contract dispute in this case concerns the interpretation of the phrase, "During the term of the Consent Agreement, CSPA agrees that neither CSPA, its officers, executive staff, or members of its governing board . . . will file any lawsuit against USA Waste seeking relief for alleged violations of the Clean Water Act . . . ."  (North Valley Consent Agreement ¶ 14.)  Defendants argue that this clause bars plaintiff from filing suit against USA Waste for CWA violations at any of its facilities until September 2012.  (Mem. of P. & A. in Supp. of Defs.' Mot. for Summ. J. at 1:12-14 (Docket No. 16-1).) Plaintiff counters that the clause only bars it from bringing suit against USA Waste for CWA violations at the North Valley facility, which was the subject of the Consent Agreement, and that it does not bar actions against other facilities owned or operated by USA Waste.  (Pl.'s Mem. in Opp'n to Mot. for Summ. J. at 1:6-11 (Docket No. 19).)

The court begins by evaluating whether the disputed contract term is unambiguous.  When read in isolation, the dispute term neither specifies that the waiver is limited to the North Valley facility, nor does it specify that it extends to other facilities owned by USA Waste.  Absent knowledge regarding the context of the agreement as a whole, the court would likely conclude that the provision serves to bar plaintiff from bringing

1   any suit against USA Waste for the term period.  Like the
2   interpretation of statutes, however, contract provisions should
3   not be read in isolation but must be construed in light of the
4   instrument as a whole.  <u>See</u> Cal. Civ. Code § 1641 ("The whole of
5   a contract is to be taken together, so as to give effect to every
6   part, if reasonably practicable, each clause helping to interpret
7   the other."); <u>Monaco</u>, 554 F. Supp. 2d at 1040.

8        The contested term comprises the second paragraph of
9   paragraph fourteen of the Consent Agreement, which is titled
10  "CPSA Waiver and Release."  The first paragraph of paragraph
11  fourteen "releases [USA Waste] from, and waives all claims which
12  arise or could have arisen from or pertain to <u>the Action</u>" based
13  on "the alleged failure of USA Waste to comply with the Clean
14  Water Act . . . at <u>the Facility</u>."  (North Valley Consent
15  Agreement ¶ 14 (emphasis added).)  Read in its entirety,
16  plaintiff urges the court to interpret paragraph fourteen's
17  waiver and release to only apply to claims arising from CWA
18  violations at the North Valley facility with the first paragraph
19  releasing the claims that plaintiff raised in the contested
20  action, and the second paragraph limiting plaintiff from filing
21  additional claims related to the facility during the consent
22  agreement term.

23       Plaintiff argues that interpreting paragraph fourteen
24  in light of the entire Consent Agreement lends itself to a
25  similar conclusion.  Paragraphs one through nine of the Consent
26  Agreement outline USA Waste's obligations under the agreement.
27  USA Waste's obligations under each paragraph specify that they
28  are limited to actions and obligations taken with regard to the

17

North Valley facility.  (<u>See, e.g.</u>, <u>id.</u> ¶ 1 (USA Waste "shall
commence all measures needed to operate <u>the Facility</u> in full
compliance with the General Permit and the Clean Water Act")
(emphasis added); <u>id.</u> ¶ 2 (USA Waste shall "improve the
effectiveness of <u>the Facility's</u> existing infiltration basin" and
"install Triton Cartridge filters in all <u>Facility</u> storm water
drains") (emphasis added); <u>id.</u> ¶ ("USA Waste shall amend the SWPP
for <u>the Facility</u>") (emphasis added).)

      Defendants rely on the principal of contract
interpretation that "[w]hen one part of a statute contains a term
or provision, the omission of that term or provision from another
part of the statute indicates the Legislature intended to convey
a different meaning." (Defs.' Reply in Supp. of Mot. for Summ.
J. at 4:10-13 (quoting <u>Klein v. United States</u>, 50 Cal. 4th 68, 80
(2010)).)  They argue that the specificity of the Consent
Agreement to the North Valley facility suggests that the parties
were capable of limiting the contract's terms to the facility
when they so desired.  Because the contested term does not
specify that it was limited to the North Valley facility,
defendants claim that the parties clearly intended the waiver
provision to apply more generally to suits against USA Waste at
any of its facilities.  Defendants further argue that there was
no need for plaintiff to sue USA Waste for further violations at
the North Valley facility because the consent agreement outlined
dispute resolution procedures.  (<u>Id.</u> at 5:21-28.)

      The contested term therefore appears to be open to two
reasonable interpretations.  Because the term is ambiguous, under
California law the court must consider relevant extrinsic

1  evidence that can prove a meaning to which the contract is

2  reasonably susceptible to determine the intention of the parties.

3  United States v. King Features Entm't, Inc., 843 F.2d 394, 398

4  (9th Cir. 1988).

5          The parties have an extensive litigation history and

6  have entered into three consent agreements other than the North

7  Valley Consent Agreement.  Of these three consent agreements, two

8  of them were drafted and signed prior to the North Valley Consent

9  Agreement and contain language that is identical to the

10 applicable language in this case with the exception that the

11 agreements also release claims "known and unknown" under

12 California Civil Code section 1542.  (Lozeau Decl. ¶ 5, Exs. A,

13 B.)  The third consent agreement was signed six months after the

14 North Valley Consent Agreement and explicitly limits plaintiff's

15 waiver to claims arising out of the facility.  (Butler Decl. Ex.

16 G ¶ 15.)  This case is the first action that has been filed

17 during the term of a consent agreement and thus the

18 interpretation of the subject provision has not yet been

19 addressed by the parties or the court.  (Def.'s Reply in Supp. of

20 Mot. for Summ. J. at 8:18-20.)  None of these agreements shed

21 light on what the parties intended in the North Valley Consent

22 Agreement and do not provide the court with assistance in

23 interpreting the contested term.

24          "Interpretation of a written instrument becomes solely

25 a judicial function only when it is based on the words of the

26 instrument alone, when there is no conflict in the extrinsic

27 evidence, or when a determination was made based on incomplete

28 evidence."  City of Hope Nat'l Med. Cntr., 43 Cal. 4th at 395.

1  The court may properly interpret the contract in this case
2  because it does so based on the words of the instrument alone.

3          In determining which inference is more reasonable, the
4  court is persuaded that the more reasonable interpretation is
5  that the parties' obligations in the North Valley Consent
6  Agreement were limited to the North Valley facility.  The purpose
7  of the consent agreement was to resolve the claims arising out of
8  plaintiff's legal action in that case and the most logical
9  conclusion is that the obligations would be similarly limited.
10 The North Valley Consent Agreement dispute resolution procedures
11 only extended to USA Waste's conduct at the North Valley facility
12 and did not provide plaintiff with any monitoring or redress for
13 CWA violations occurring at USA Waste's other facilities.  The
14 more reasonable interpretation of the contested provision when
15 read in light of the entire contract is that plaintiff did not
16 forebear from bringing suit against other facilities.  If the
17 contested provision was intended by the parties to waive
18 plaintiff's right to sue USA Waste at any of its facilities for
19 the term period, the court would expect the provision to be more
20 specific and thoroughly discussed.  The term was instead buried
21 at the end of a paragraph which, for the most part, limited its
22 waiver and release obligations to the North Valley facility.
23 Accordingly, the court will deny defendants' motion for summary
24 judgment.

25         IT IS THEREFORE ORDERED that defendant USA Waste's
26 motion to dismiss be, and the same hereby is, DENIED.

27         IT IS FURTHER ORDERED that defendants USA Waste and
28 Cameron's joint motion for summary judgment be, and the same

1  hereby is, DENIED.

2  DATED:   June 19, 2012

3

4  WILLIAM B. SHUBB

5  UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21